**SO ORDERED.**

**SIGNED this 24 day of April, 2008.**



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| RONALD EUGENE LAW, SR., | ) | Case No. 07-40863 |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER
## SUSTAINING TRUSTEE'S OBJECTION TO CONFIRMATION OF PLAN

Congress, in enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of

2005 (BAPCPA),[1] intended to require debtors to pay some or all of the debt owed to their unsecured

creditors if they had the financial ability to do so.[2] To implement that intent, Congress tried to create

certain bright-line rules to define what income and expenses a debtor could claim, both for purposes

---

[1]This case was filed after October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All future statutory references are thus to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101 - 1532 (2005), unless otherwise specifically noted.

[2]*See* 151 Cong. Rec. S2470 (daily ed. Mar. 10, 2005) (statement of Sen. Nelson) ("First and foremost, the bill will curb abuse of the bankruptcy system by implementing a means test to ensure that those who can afford to repay some portion of their unsecured debts are required to do so."), and H.R. Rep. No. 109-31(I), 2005 U.S.C.C.A.N. 88, 89 (means testing is "intended to ensure that debtors repay creditors the maximum they can afford").

of eligibility to file a Chapter 7 proceeding, and to determine how much a debtor would have to pay his creditors if he was either forced to proceed under a Chapter 13 plan, or elected to do so.

To assist in implementing these statutory provisions, the Judicial Conference developed a form, Form 22, that attempted to interpret the provisions of 11 U.S.C. § 707(b) in a way that would allow all interested parties to easily complete the form. The hope was that the pertinent findings about eligibility, and the amount the debtor would be required to pay his unsecured creditors, could be readily ascertained through the use of this form. But this case is a good example of the phrase, "the devil is in the details," as all parties in interest in these proceedings have come to learn that completion of the form in a way that is faithful to the statutory language is decidedly more difficult than it first looks.

This matter is before the Court on the Trustee's Objection to Confirmation of Plan.[3] The Trustee has raised four separate objections to Debtor's completion of Official Form 22C, the iteration of this form required for use in Chapter 13 cases. Those objections are as follows: (1) the Trustee objects to the inclusion of Debtor's non-dependent, adult son in his "household size" for purposes of calculating his applicable commitment period and projected disposable income; (2) if Debtor is allowed to include his son in his household size, the Trustee argues that Debtor must also include his son's income, if any, in his projected disposable income calculations, and no such income is included; (3) the Trustee objects to Debtor's deduction of an expense for a tax levy on Line 33, noting that it is both improper, and duplicative of an allowance Debtor has also claimed on Line 49; and (4) the Trustee objects to the inclusion of a vehicle ownership expense on Line 28 of

---

[3]Doc. 35.

Case 07-40863    Doc# 52    Filed 04/24/08    Page 2 of 31

Form 22C because the vehicle in question was unencumbered on the date Debtor filed his bankruptcy petition.

The parties have filed a fairly limited stipulation of facts, which this Court adopts, as well as briefs on most legal issues. The Court has jurisdiction to decide this matter,[4] and it is a core proceeding.[5]

## I.    FINDINGS OF FACT

Debtor, Ronald Law, filed for relief under Chapter 13 of the Bankruptcy Code on June 28, 2007. He completed and filed the required Form 22C, indicating on Line 16 that his "household size" for the "applicable median family income" was two people—himself and his adult son. The adult son is not a dependent of Debtor for tax purposes, but resides in Debtor's home. Debtor does not claim that his son is either disabled or otherwise unable to support himself. Although he included his son as a member of his household, he did not include any income attributable to his son on Line 7 for any amounts that his son might regularly pay for household expenses, on Line 9 for "income from all other sources," or anywhere else, on Form 22C. The parties' stipulation is silent about whether the adult son earns income, or pays any household expenses.[6]

---

[4]28 U.S.C. § 1334.

[5]28 U.S.C. § 157(b)(2)(L).

[6]Although the parties' stipulation is silent regarding any employment by the son, or whether he regularly contributes any amount to pay household expenses, Debtor's brief claims that Debtor's son "was employed with minimal income" and that he did not "regularly contribute" to the expenses of Debtor's household. This opinion and order, which will require Debtor to amend and re-file his Form 22, will not prejudice the parties from further litigating the issue of whether the son regularly contributes to Debtor's household. The issue may be immaterial, however, because the Claims Register shows that unsecured claims totaling $36,739.31 have been filed, and this order will result in a monthly payment amount to unsecured creditors that, when multiplied times 60 months, is well in excess of $36,739.31.

3

Debtor's own annualized "current monthly income," as that term is defined by 11 U.S.C. § 101(10A), is $71,389.56.[7] Because this amount is substantially greater than the median family income in Kansas for a household of either one ($37,814.06) or two ($50,244) persons, Debtor is an above-median income debtor regardless whether he is entitled to claim his son in the calculation of household size.

Whether Debtor can claim a one or two person household, however, does impact the amount he is entitled to claim as a deduction from income for clothing, household supplies, personal care and miscellaneous under § 707(b)(2)(A)(ii)(I), and ultimately, how much he must pay to his unsecured creditors over his 60-month applicable commitment period. In addition to that expense issue, the Trustee objects to two other specific expense deductions claimed by Debtor.

The first is Debtor's deduction on Line 33[8] of $1,293.06 per month for sixty months, which results in a total of $77,583.36 that Debtor would otherwise be required to pay his unsecured creditors over the sixty month period. The source of this claimed expense is the monthly pre-petition amount that the Internal Revenue Service had been levying against Debtor's wages to collect back taxes that Debtor had not voluntarily paid. Debtor claims this tax levy, which is essentially the same as a wage garnishment, is akin to a "court-ordered payment," the deduction of which is allowed under § 707(b)(2)(A)(ii)(I). In addition to deducting from income $1,293.06 per month representing the monthly amount of the pre-petition wage levy, which levy had to cease upon filing as a result of the provisions of § 362, Debtor also claimed a deduction on Line 49 of Form 22C

___

[7]Debtor has noted, in briefing, however, that this amount is inflated because it included, during the six-month look back period required by § 101(10A), overtime pay for work that is not always available.

[8]The form states, for Line 33, "**Other Necessary Expenses: court-ordered payments**. Enter the total monthly amount that you are required to pay pursuant to court order, such as spousal or child support payments. **Do not include payments on past due support obligations included in Line 49** [Payments on priority claims]." (Emphasis in original).

4

for $239.51 per month.  Line 49 allows debtors to deduct from income the total amount of all priority claims, divided by sixty, to arrive at a monthly figure that has to be paid to unsecured, non-priority creditors.[9]

The Trustee's second objection to claimed expenses concerns a vehicle ownership expense that Debtor deducted from income for his fourteen year old vehicle[10] in the amount of $471 on Line 28 of Form 22C.  Because this car was totally unencumbered as of the date of filing, the Trustee's position is that Debtor is entitled to claim no portion of that vehicle ownership expense as a deduction from income.[11]

For the reasons set forth more fully below, the Court sustains each of the Trustee's objections.

## II.    ANALYSIS

### A.    Debtor cannot include his non-dependent child in calculating his household size or living expenses on Line 24 of Form 22C.

The first objection raised by the Trustee concerns Debtor's inclusion of his non-dependent, adult son as a member of his household when calculating deductions on the means test.  The Trustee argues, in part, that the Bankruptcy Code does not allow Debtor to claim expenses for non-

---

[9]Although it is admittedly difficult for debtors to precisely calculate their priority debt on the date of filing, because of accumulating pre-petition interest and penalties, the Proof of Claim filed by the State of Kansas (Claim 1-3) shows a priority claim of $2,472.98 and the Proof of Claim filed by the Internal Revenue, Claim 6-1, shows that Debtor actually had a priority debt of $11,101.76 on the date of filing. This results in a proper deduction of $226.25 over 60 months on Line 49, or $13.26 less than Debtor claimed.

[10]Debtor exempted his eighteen year old car—a 1994 Chevrolet Astro Van with 121,000 miles, valued at $1,500, on his Schedule C.

[11]As Judge Nugent noted in *In re Howell*, 366 B.R. 153, 155 (Bankr. D. Kan. 2007), and as the Trustee has acknowledged in his brief (Doc. 46) at note 1, Debtor is entitled to an additional operating expense of $200 because his car is both over 6 years old and has reported mileage well in excess of 75,000 miles.  *See* Internal Revenue Manual, Financial Analysis Handbook, § 5.8.5.5.2(3) found at http:// www. irs. gov/ irm/ part 5/ ch 08 s 05. html.  *See also Wieland v. Thomas*, 382 B.R. 793, 798-99 (D. Kan. 2008).

5

dependents, with certain exceptions not relevant here. Debtor, on the other hand, argues that the Court should adopt a broad definition of the term "household" to include any person residing in the same location as Debtor, regardless whether the individual is a dependent for tax purposes.

Prior to the passage of BAPCPA, Chapter 13 debtors were required to pay all of their disposable income into their Chapter 13 plan for a period of at least 36 months, but no longer than 60 months. A debtor's disposable income was then calculated by subtracting his or her actual and reasonable expenses, as reported on Schedule J, from his or her actual income, as reported on Schedule I. BAPCPA created a seismic shift in how disposable income is now calculated by creating the "means test." This test redefines both what constitutes income as well as what expenses a debtor may properly claim as a deduction from that allowed income.

Confirmation of a Chapter 13 plan is governed by 11 U.S.C. § 1325. Under that section, the Court cannot confirm a Chapter 13 plan, over an objection by the trustee or the holder of an allowed unsecured claim, unless (1) the plan proposes to pay the unsecured claims in full,[12] or (2) "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan."[13] At issue in this case is whether Debtor has complied with the requirements of § 1325(b)(1)(B) by providing for payment, in his plan, of all

---

[12]11 U.S.C. §1325(b)(1)(A).

[13]11 U.S.C. § 1325(b)(1)(B).

Case 07-40863   Doc# 52   Filed 04/24/08   Page 6 of 31

of his projected disposable monthly income during the life of his Chapter 13 plan towards the repayment of unsecured, non-priority, creditors.[14]

The term "disposable monthly income" means the debtor's current monthly income, as newly defined by § 101(10A), less amounts reasonable necessary to be expended "for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation that first becomes payable after the date the petition is filed," for charitable contributions in an amount not to exceed 15 percent of a debtor's gross income, and, if the debtor is engaged in business, for the payment of costs necessary for the continuation, preservation, and operation of that business.[15]  If the debtor's currently monthly income, when multiplied by 12, is greater than the median family income for a household of the same size, and in the same state where the debtor resides, then the "[a]mounts reasonably necessary to be expended under [§ 1325(b)(2)], shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)."[16]

In this case, it is undisputed that Debtor's "current monthly income" is greater than the median income for either a one or two person family in Kansas.  Therefore, pursuant to § 1325(b)(3), the Court must carefully examine § 707(b)(2)(A) and (B) to determine what amounts are reasonably necessary to be expended "for the maintenance or support of the debtor or a dependent of the debtor."  Section 707(b)(2)(A)(ii)(I) states:

---

[14]*See In re Echeman*, 378 B.R. 177, 181 (Bankr. S.D. Ohio 2007) (holding that if a debtor is allowed to deduct priority unsecured claims before reaching the calculation of disposable income and then pay priority unsecured claims out of projected disposable income under § 1325(b)(1)(B), the debtor would in effect be allowed to "double-count" or deduct the same priority claims twice before paying nonpriority unsecured creditors), *citing In re Peutz*, 370 B.R. 386, 391 (Bankr. D. Kan. 2007).

[15]11 U.S.C. § 1325(b)(2).

[16]11 U.S.C. § 1325(b)(3).

7

The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, <u>for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent</u>.[17]

In addition to the expenses set forth in the IRS standards provided for in § 707(b)(2)(A)(ii)(I), the

Code allows deduction of the following additional expenses:

1.  The debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 of the Family Violence Prevention and Services Act, or any other applicable Federal law [not claimed here–Line 41];[18]

2.  An additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the IRS if the debtor can show the increase is reasonable and necessary [not claimed here–Line 44];[19]

3.  The continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family if such person is unable to pay for such reasonable and necessary expenses [not claimed here–Line 40];[20]

4.  For a debtor eligible for a Chapter 13 case, the actual administrative expenses of administering a Chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments [not claimed here–Line 50, but presumably should have been];[21]

---

[17]Emphasis added.

[18]11 U.S.C. § 707(b)(2)(A)(ii)(I).

[19]*Id.*

[20]11 U.S.C. § 707(b)(2)(A)(ii)(II).

[21]11 U.S.C. § 707(b)(2)(A)(ii)(III). The Trustee's brief, at note 1, acknowledges Debtor is entitled to $34.58/month on Line 50 for expenses of administration. *See* Doc. 46. The Trustee now raises, for the first time, the accuracy of Debtor's $350/month health care expense on Line 36. Nothing in this decision will prejudice the Trustee from further inquiring about this expense, and if Debtor wishes to remain in this Chapter 13 proceeding, and elects to amend his Form 22C in conformity with this decision, he should be sure that the expenses claimed on Line 35 are amounts incurred <u>after</u> payment of any health insurance or health savings account that he included in his "mandatory

8

5. The actual expenses for each dependent child less than 18 years of age to attend a private or public elementary or secondary school, up to $1,650 per year, provided the debtor can provide documentation demonstrating such expenses and an explanation as to why those expenses are not already included in other deductions [not claimed here–Line 43];[22]

6. An allowance for housing and utilities in excess of the allowance specified by the Local Standards for housing and utilities issued by the IRS, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and can show that the actual expenses are reasonable and necessary [not claimed here–Line 42].[23]

Finally, § 707(b)(2)(B) allows debtors to establish special circumstances that justify additional expenses, provided the debtor can itemize and provide documentation for those expenses and give a detailed explanation of the special circumstances making such expenses reasonable and necessary.[24] Debtor has not claimed "special circumstances"exist that could bring the claimed expenses under the special allowances in either § 707(b)(2)(A)(ii)(II) or § 707(b)(2)(B).

Based upon the clear statutory language contained in § 707(b)(2)(A) and (B), the Court finds that Debtor cannot claim expenses for his non-dependent adult son. The statutory language that allows debtors to claim a deduction for monthly expenses under the National Standards issued by the IRS clearly requires that those expenses must be "for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent."[25] There is simply nothing in § 707(b)(2) that authorizes this Debtor to claim expenses for his non-dependent, adult son who happened to be living in his home on the date of filing. As the Bankruptcy Court in

_____

payroll deductions" of $285.62 on Line 31, or which can be included in Line 39, when applicable.

[22]11 U.S.C. § 707(b)(2)(A)(ii)(IV).

[23]11 U.S.C. § 707(b)(2)(A)(ii)(V).

[24]11 U.S.C. § 707(b)(2)(B).

[25]11 U.S.C. § 707(b)(2)(A)(ii)(I)

9

the District of South Carolina noted, "[t]o the extent that Official Form B22C indicates that Debtors may include [non-dependents] in the means test calculation, it must yield to the plain language of § 707(b)(2), which only allows Debtors to include dependents."[26]

Debtor relies on case law from outside the Tenth Circuit to support his position that his son should be included in the means test calculation. In *In re Ellringer,*[27] the Chapter 7 debtor sought to include an unrelated, non-dependent adult who lived in her home as part of her "household," because the size of her household was dispositive of whether she would be deemed an above or below-median income debtor. In other words, if one compared Ellinger's income to the median income for a family of two in Minnesota, her income was less than the median family income for a family of two. Conversely, if she was only allowed to claim one member of her household–the debtor herself, her income exceeded the median family income for a family of one and her filing would be deemed presumptively abusive of the provisions of Chapter 7.

Section 1325(b)(3) requires courts to determine whether the debtor's current monthly income is greater than "in the case of a debtor in a <u>household</u> of 1 person, the median income of the applicable State for 1 earner"[28] or "in the case of a debtor in a <u>household</u> of 2, 3, or 4 individuals, the highest median income of the applicable State for a family of the same number or fewer individuals . . . ."[29] Because the Bankruptcy Code specifically references the debtor's "household"

---

[26]*In re Napier*, 2006 WL 4128358 (Bankr. D. S.C. 2006).

[27]370 B.R. 905 (Bankr. D. Minn. 2007).

[28]11 U.S.C. § 1325(b)(3)(A) (emphasis added).

[29]11 U.S.C. § 1325(b)(3)(B) (emphasis added).

10

size, the *Ellinger* court found the central issue to be whether the non-dependent living in the house should properly be included in the household.

That court rejected the argument that it should look to the Internal Revenue Manual's interpretation of this issue, which indicates that the number of persons allowed under the national standard expenses should "generally" be the same as the number of dependents on the taxpayer's latest income tax return.[30] Instead, it adopted a broad definition of "household," finding that the debtor, coupled with the non-dependent living in her home, constituted a household of two individuals. Because that debtor's current monthly income was less than the median family income for a household of two in Minnesota, the court found her to be a below-median income debtor, and that it was thus not bound by § 707(b)(2)(A) and (B) in determining her reasonable monthly expenses.

The fact that Ellinger's income was deemed to be below the median income for a family of two makes *Ellinger* factually distinguishable to this case. Once the court made the determination that the debtor's income fell below the state's median income level, it was not required by statute to—and did not, then utilize § 707(b)(2)(A) and (B) to determine what expenses the debtor was entitled to deduct from income. Conversely, this Court must utilize § 707(b)(2)(A) and (B) here because Debtor is an above-median income debtor regardless whether his son is counted in his family size. Once this Court is required to follow § 707(b)(2)(A)(ii)(I), it becomes abundantly clear that above-median income debtors in Chapter 13 cases may only claim expenses for themselves, their dependents, and their spouse (in a joint case) if the spouse is not otherwise a dependent.

---

[30]370 B.R. at 911 (citing "Internal Revenue Manual, § 5.15.1.7 (2004), *available at* http://www.irs.gov/irm/part5/ch15s01.html#d0e182366.)"

Accordingly, since the expense side of the equation is all that is pertinent in this case, *Ellinger* is not particularly helpful.

Secondly, it is important to note that the statutory provisions that govern the means test calculation only use the term "household" when determining whether a debtor is an above median income debtor, or a below median income debtor. When it comes to determining the expenses allowed as an offset against a debtor's income, however, Congress does not use the term "household." Instead, the Code, at §§ 707(b)(2) and 1325(b)(3), very consistently limits allowable expenses to those of the debtor, the debtor's dependents, and the spouse of the debtor.

The only exception to this clear rule is found in § 707(b)(2)(A)(ii)(II), where the Court specifically allows for the <u>continuation</u> of actual expenses "for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family . . . who is unable to pay for such reasonable and necessary expenses." Accordingly, unless the additional people sharing a home with a debtor fall within the limited class of people to whom the additional expenses set forth in § 707(b)(2)(A)(ii)(II) apply, the Code does not allow a debtor to include them in the expense calculations for the means test.

Other courts have admittedly taken different approaches in allowing debtors to claim expenses under the National Standards for people living in their home who do not qualify as dependents. For example, in *In re Jewell*,[31] the Chapter 7 debtors wished to claim an adult daughter and her three children who lived with them and for whom they provided substantial support. The court focused on the definition of "household," and held that such term should be read broadly

---

[31]365 B.R. 796 (Bankr. S.D. Ohio 2007).

enough to allow debtors to deduct expenses for individuals who debtors support,[32] even if not a dependent under the Internal Revenue Code definition of that term. However, as noted above, at no time did Congress use the term "household" in relation to the expenses that may be deducted from income. The term "household" is only used to determine whether a debtor has above-median income or below-median income, and Congress consistently limited expenses to those incurred by the debtor, the debtor's spouse, and the debtor's dependents—not to any person who happens to live in the debtor's household.

A different approach was taken by the court in *In re Plumb*.[33] There, the above-median income Chapter 13 debtors attempted to include their seven children, grandchildren or great grandchildren, and fiancee of one of these seven descendants, in their household size for completion of Lines 24 and 25, the National and Local Standards for food, clothing, household supplies, personal care, and miscellaneous, as well as housing and utility costs. The Court correctly recognized that the Bankruptcy Code expressly limited expense deductions to the debtor, the debtor's spouse, and the debtor's dependents, but then noted that Form 22C, itself, instructed the debtor to calculate the relevant expenses based upon the applicable "family size." In resolving this conflict between the language of the actual statute and language on the form, the court "defer[red]

---

[32]*Id.* at 800. The Court declined to accept the "head on beds" approach that debtors argued was justified by the reference to calculations made by the Bureau of the Census in determining "median family income" under § 101(39A), finding that such definition was inconsistent with the methodology and purpose of Form 22A because it did not include the element of a debtor's support of the person who puts the head on the bed, and noting that although that is how the Bureau of the Census determines a household, its purpose in counting (i.e., determining the number and demographics of those residing in particular areas of the United States) is radically different and bears no relationship to the purpose of the Official Form B22A." *Id.*

[33]373 B.R. 429 (Bankr. W.D.N.C. 2007).

to Form B22C because of the specificity of the instructions on the form and because it recognizes the actual living situation of many families."[34]

The *Plumb* court also noted that in some circumstances, Line 7 of Form 22C may require a debtor to include income from someone living in the debtor's house in calculating the debtor's current monthly income, and "[i]t would be patently unfair to require debtors to list financial contributions to the household expenses for purposes of determining current monthly income while not allowing them to take the higher National and Local Standard deduction for living expenses."[35] Finally, the Court held that "it is clear from Form B22C that Congress did not intend to limit the 'family size' on Lines 24 and 25A to the dependents of the debtors. Congress specifically so limited the expense deductions on Line 37 of Form B22C. Had Congress meant to limit the deductions on Lines 24 and 25A to dependents, it would have done so."[36]

The Court declines to follow *Plumb*, as unpersuasive, for several reasons. First, when an official form is in conflict with statutory language, the court cannot choose to defer to the official form. The statute controls over the official form.[37] Second, the Court disagrees that "it is clear from Form B22C that Congress did not intend to limit the 'family size' on Lines 24 and 25A to the dependents of the debtors." Congress did not create Form 22C. Congress drafted and passed BAPCPA, while the Judicial Conference of the United States created Form 22C.[38] This Court thus

---

[34]*Id.* at 437.

[35]*Id.*

[36]*Id.* at 437-38.

[37]*See, e.g.*, *In re Lasowski*, ___ B.R. ___, 2008 WL 833971 (8th Cir. BAP 2008), *In re Pak*, 378 B.R. 257 (9th Cir. BAP 2007),

[38]*See* Fed. R. Bankr. P. 9009, which indicates that the Official Forms are those prescribed by the Judicial Conference of the United States or the Director of the Administrative Office of the United States Courts.

14

rejects the notion that any instructions on that form can be used to divine congressional intent—especially when the language on the form directly conflicts with clear statutory language, which language the *Plumb* court recognized. Finally, although the Court agrees that it seems unfair to require a debtor to claim income from someone living in the debtor's home in the means test calculation, without also allowing the debtor to claim expenses for that person, it is neither the Court's responsibility, nor within the Court's power, to ignore statutory requirements on the basis that the Court believes Congress has acted unfairly.[39] Moreover, it is just as likely that a debtor could seek to claim expenses for an individual who lives in the debtor's home, but not include any income from that individual because that person does not contribute any money "on a regular basis for the household expenses of the debtor or the debtor's dependents," as required by § 101(10A).[40] That fact pattern produces an equally unfair result for creditors as the *Plumb* court's hypothetical creates for debtors. Unfairness seems to abound in the application of the new law to individual fact patterns, but this Court must defer to Congress to fix any perceived unfairness.

Debtor also makes the policy argument that the Court should construe the statute to allow him to include his son in his household because if his son had to pay for his own housing, his son would get in debt and possibly need to file bankruptcy, himself. This argument is unpersuasive on at least two counts. First, Debtor admits his adult son is "minimally" employed, without indicating

---

[39]*See In re Miller,* 378 B.R. 418 (Table), 2007 WL 2332391 (10th Cir. BAP 2007) (quoting from *In re Horwitz,* 167 B.R. 237, 241 (Bankr. W.D. Okla. 1994) as follows: "We, however, believe it is not the Court's duty to create policy, but that of Congress. 'In sum, while judges might crave the freedom to always decree what is equitable and socially useful in the cases before us the Supreme Court says that we do not possess it when a statute or rule provides clear direction.'").

[40]And that is the fact pattern currently before this Court—Debtor is seeking to deduct in essence an additional $390 per month for his adult son, but because the son contributes nothing regularly to Debtor's household expenses, Debtor claims that his son's income would fall outside the language of § 101(10A). And, again, the parties' stipulation does not include information about the son's employment, so the Court does not know whether here the son has income he could theoretically contribute.

15

that there is any "special circumstance" or other reason why he isn't fully employed. Perhaps the answer lies in the son becoming fully employed. Secondly, and more importantly, Debtor's policy argument is basically asking this Court to prefer Debtor's son and his son's potential creditors over his own creditors. The better question is whether Debtor's creditors should, in effect, subsidize Debtor's adult son who may well be fully capable of working and supporting himself? Congress appears to have answered this latter question in the negative.[41]

Because Debtor's adult son is not his dependent, and Debtor has made no allegation that the son falls within the group of individuals identified in § 707(b)(2)(A)(ii)(II) (elderly, chronically ill, or disabled household member or member of the debtor's immediate family), the Court finds that his inclusion in the means test calculation was in error and the Trustee's objection on that basis will be sustained. Debtor is limited to claiming the monthly expenses authorized under the National Standards issued by the IRS for a household of one person. Therefore, Debtor can only claim $916[42] on Line 24 of Form 22C, rather than the $1,306 he attempted to claim based upon a two person household. This will result in an additional $390 per month available for payment of unsecured creditor claims, or $23,400 over the 60-month applicable commitment period.

**B.** **Debtor cannot claim an automobile ownership expense for a vehicle that is unencumbered.**

---

[41]*See, e.g., In re Beckerman*, 381 BR 841, 851 (Bankr. E.D. Mich. 2008) (holding that although the debtors' desire to support their three college-aged children while they attend college is understandable, that desire cannot be supported when it in effect requires their creditors, who would receive nothing in the chapter 7 proceeding, to unwittingly bear that cost).

[42]The Court notes that it is using the numbers contained in the National and Local Standards that were in effect on the date this case was filed. IRS changed those standards after this case was filed. For ease of application, the United States Trustee's website contains a drop-down menu that brings up the Standards in effect on the pertinent filing date: http://www.usdoj.gov/ust/eo/bapcpa/meanstesting.htm.

16

The Trustee also objects to Debtor's deduction of $471 per month from his income as an automobile ownership expense, because Debtor's car is unencumbered by any debt. In other words, the Trustee argues that Debtor cannot deduct the IRS standard transportation ownership/lease expense from income when completing the means test calculation if he does not actually have to make a monthly loan or lease payment. Conversely, Debtor claims that the allowance for an automobile ownership expense is an expense Congress made available to any debtor who owns an automobile, and the only variable is the exact amount of the allowance, based upon the region of the country in which the debtor resides.[43]

As discussed in a previous section of this opinion, because Debtor is an above median income debtor, § 1325(b)(3) requires him to calculate his reasonable and necessary monthly expenses pursuant to the standards set forth in § 707(b)(2)(A) and (B). The statutory language relevant to this issue is found in § 707(b)(2)(A)(ii)(I). It states:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . . .

The Court agrees with the majority of courts who have considered this issue that the central inquiry is what the term "applicable" means when describing the monthly expense amounts specified under the National and Local Standards issued by the IRS. Unfortunately, although most courts agree what the issue is, there is a clear split among the dozens of courts who have issued opinions on this issue as to how that term should be interpreted and at last count, the courts were fairly evenly split.

_____

[43]The vehicle ownership expense is a separate expense from the vehicle operation expense. Form 22C allows debtors to deduct an expense on Line 27 for the operating costs of owning a vehicle. The vehicle ownership expense is separated from the operation costs, and allowed on Line 28 (and Line 29 if a debtor and his spouse own at least two vehicles).

17

Some courts have held that for an expense to be "applicable," it must be an expense that actually applies to the debtor's situation—linking the word "applicable" to the phrase "monthly expense." In other words, in order for the automobile ownership expense to be "applicable," a debtor must in fact have an automobile ownership expense.[44] Other courts have held that the word "applicable" instead refers to the National and Local Standards—finding that the "applicable" standards are those specific to the debtor's state or region. In other words, if a debtor owns an automobile, the court need only look to the "applicable" local standard for the region in which the debtor lives to find the allowable expense, without taking into account whether the debtor actually has any such expense. [45]

Those courts that have not allowed debtors to claim the automobile ownership expense on Form 22C if the debtor does not actually have a car payment have traveled various paths to reach that position. Some courts have relied solely on the statutory language and construed the term "applicable" to mean that the expense itself has to be applicable to the debtor, and that if the debtor has no car payment, then the expense is not applicable to the debtor and cannot be claimed.[46] This holding is best explained by the court in *In re Ross-Tousey:*[47]

---

[44]*See, e.g.*, *In re Canales*, 377 B.R. 658 (Bankr. C.D. Cal. 2007), *In re Brown*, 376 B.R. 601 (Bankr. S.D. Tex. 2007), *In re Pampas*, 369 B.R. 290 (Bankr. M.D. La. 2007), *In re Ross-Tousey*, 368 B.R. 762 (E.D. Wis. 2007), and *In re Howell*, 366 B.R. 153 (Bankr. D. Kan. 2007).

[45]*See, e.g.*, *In re Musselman*, 379 B.R. 583 (Bankr. E.D.N.C. 2007), *In re Scarafiotti*, 375 B.R. 618 (Bankr. D. Colo. 2007), *In re Moorman*, 376 B.R. 694 (Bankr. C.D. Ill. 2007), *In re Farrar-Johnson*, 353 B.R. 224 (Bankr. N.D. Ill. 2006), and *In re Demonica*, 345 B.R. 895 (Bankr. N.D. Ill. 2006).

[46]*See, e.g. In re Canales*, 377 B.R. 658, 665-66 (Bankr. C.D. Cal. 2007) (holding that "the term 'applicable' in § 707(b)(2)(A)(ii)(I) . . . require[s] that the debtor make some lease or loan payments on a vehicle in order to be entitled to claim the deduction for transportation ownership expenses.").

[47]368 B.R. 762 (E.D. Wis. 2007)

18

Instead of viewing "applicable" and "actual" as having virtually opposite meanings, another reading of the statute would allow a debtor to deduct the auto expense listed in the Standards *if* the debtor actually had an auto expense in the first place. This reading gives meaning to the distinction between "applicable" and "actual" without taking a further step to conclude that "applicable" means "nonexistent" or "fictional." Under this reading, it is true that the debtor's "actual" expense does not control the *amount* of the deduction, but the debtor must still have *some* expense in the first place before the Standard amount becomes "applicable." The term "applicable" merely means, in this context, that when a debtor has an automobile ownership expense, his deduction is not based on that actual expense but on the applicable expenses listed in the Standards.[48]

Another persuasive comment made in support of this approach to the deductibility of an automobile expense is found in *In re Slusher*,[49] where the court noted:

Had Congress intended to indiscriminately allow all expense amounts specified in the National and Local Standards, it would have written 707(b)(2)(A)(ii)(I) to read, "The debtor's monthly expenses shall be the monthly expense amounts specified under the National Standards and Local Standards . . . ." rather than "The debtor's monthly expenses shall be *the debtor's applicable* monthly expense amounts under the National and Local Standards . . . ."[50]

In other words, Congress did not need to insert the term "applicable" if it is to be used to modify the term "Local Standards" because, by definition, the debtor would have to look to the Local Standards that apply to the debtor when taking that expense deduction—what other standard would be used? If Congress intended to allow a debtor to take all of the National and Local Standards, regardless of whether the specific expense was applicable to the debtor, it could have simply left the word "applicable" out of § 707(b)(2)(A)(ii)(I). A better reading of that section is that the term "applicable" is meant to clarify that the expense itself must be applicable to the debtor—as that reading gives meaning to the term "applicable" and justifies its use in the statutory language.

---

[48]*Id.* at 765 (emphasis in original).

[49]359 B.R. 290 (Bankr. D. Nev. 2007).

[50]*Id.* at 309 (emphasis in original).

19

Other courts have also relied upon different grounds to support a reading of § 707(b)(2)(A)(ii)(I) that mandates that a debtor actually have a car ownership expense before the debtor can take that deduction on Line 28 of Form 22C. Some courts have recognized that the IRS standards incorporated in to the Bankruptcy Code in § 707(b)(2)(A)(ii)(I) do not exist in a vacuum, and the Court should therefore be guided by the policies and procedures used by the IRS when they apply these standards.

The National and Local Standards incorporated into the Code serve as guidelines for IRS revenue officers seeking to collect delinquent taxes.[51] In applying these standards, revenue officers thus use the guidance given in the Internal Revenue Manual, Financial Analysis Handbook ("IRM").[52] "The Manual disallows the ownership expense 'after the terms of the loan/lease have been satisfied,' but provides for an additional operating allowance of $200 per month where the paid-for vehicle is over six years old and/or has over 75,000 recorded miles."[53] This Court agrees with the court in *Howell*, which noted that "[i]t is unlikely that Congress intended the statute to merely import the numbers without their attendant meaning and context."[54]

A slightly different approach was taken by the district court in *Wieland v. Thomas*.[55] In reversing the bankruptcy court's order that allowed an expense deduction regardless whether the debtor was obligated to make actual car payments, Judge Lungstrum held:

---

[51]*In re Howell*, 366 B.R. 153 (Bankr. D. Kan. 2007).

[52]*Id.* at 157.

[53]*Id.*

[54]*Id.*

[55]382 B.R. 793 (D. Kan. 2008).

20

This language does not suggest an intent by Congress that the numbers should simply be plucked from the Standards for a debtor's expenses under the means test as if in a vacuum, without reference to the context and meaning of those numbers. The numbers in the Standards do not represent expense allowances; rather, they represent caps on expense allowances, as the IRS intends that the lesser of the Standard amount and the person's actual expense be used for all of the National and Local Standards. Thus, in allowing the "applicable . .. amounts specified under the . . . Standards," Congress has imported those tables as a whole, with their contents' context and meaning—i.e., with the numbers representing caps, as applied by the IRS—into the means test calculation. Moreover, the reference to amounts specified "under" the Standards indicates that one should use the numbers that result when the Standards are applied as they usually are, and not simply use the numbers appearing "in" the Standards.[56]

Most courts that have allowed a debtor to claim the automobile ownership expense despite not having any actual expense have focused on the distinction between the term "applicable" expenses and "actual" expenses found in § 707(b)(2)(A)(ii)(I). For example, the court in *In re Farrar-Johnson*,[57] held:

Congress drew a distinction in the statute between "applicable" expenses on the one hand and "actual" expenses on the other. "Other Necessary Expenses" must be the Debtor's "actual" expenses. Expenses under the "Local Standards," in contrast, need only be those "applicable" to the debtor--because of where he lives and how large his household is. It makes no difference whether he "actually" has them.[58]

A similar result was reached in *In re Scarafiotti*.[59] In that case, the court, while recognizing the clear split in authority on this issue, found that a debtor can take the automobile ownership expense even if there is no actual expense present. In reaching that conclusion, the court specifically rejected the incorporation of the IRM, noting that prior versions of BAPCPA made specific

---

[56]*Id.* at 797-98. The court in *Thomas* went on to state that it did not actually have to decide whether the debtor would be entitled to claim the full amount of the IRS standard if his car payment was less than that amount since the debtor had no actual car payment.

[57]353 B.R. 224 (Bankr. N.D. Ill. 2006).

[58]*Id.* at 230-31.

[59]375 B.R. 618 (Bankr. D. Colo. 2007).

21

reference to that manual, but such references were withdrawn in the final version of BAPCPA.  The court also engaged in a thorough and persuasive statutory analysis in finding that an incorporation of the IRM did not fit within well established rules of statutory construction.  In addition, the court found that allowing all debtors to take the expense deduction, regardless of whether they actually had a automobile ownership expense, was consistent with BAPCPA's intent in to "impose a 'rigid and inflexible' set of expense standards."[60]  Further, the court found that "[t]his allowance merely reflects the reality that debtors who own their vehicles outright will typically have older vehicles that will require numerous repairs and/or will soon need to be replaced, likely in the course of a five-year plan."[61]  Finally, the court noted that to the extent the rigid expense standards imposed by the means test allow a debtor to abuse the bankruptcy system, courts may still consider whether a petition has been filed in bad faith, or whether the totality of the circumstances warrants dismissal for abuse.[62]

Although the Court agrees that persuasive arguments exist on both sides of this issue, the Court will adopt the line of cases holding that a debtor cannot claim an expense deduction on Line 28 of Form 22C for an automobile that is unencumbered.  Given the split of authority on this issue, and the fact that many of the courts on both sides claim to be applying the "plain meaning" of the statute, the Court does not find that the provisions of § 707(b)(2)(A)(ii)(I) are in any way clear or unambiguous in this setting.  Instead, the Court is adopting the approach that seems to best fit both the statutory language and expressed Congressional intent behind BAPCPA.

---

[60]*Id.* at 630 (quoting 145 Cong. Rec. H2718 (daily ed. May 5, 1999) (statement of Chairman Hyde)).

[61]*Id.*

[62]*Id.*

Case 07-40863   Doc# 52   Filed 04/24/08   Page 22 of 31

The Court agrees with those cases that hold that if a debtor does not have an expense provided for in the National and Local Standards, then that expense is not "applicable" to the debtor and he cannot claim it on Form 22C. The Court agrees that the use of the terms "applicable" and "actual" must have different meanings in the context of § 707(b)(2)(A)(ii)(I). As noted by the court in *Slusher*, if the term "applicable" is used to describe the applicable local standards for the region in which the debtor lives, then the term is completely unnecessary. In other words, surely no court would allow a Kansas debtor to apply the California standards, thus making the term "applicable" in this context redundant.

Conversely, Congress used the term "actual" to describe those expenses that fall under the "other necessary expenses" category because for that class of expenses, debtors are allowed to take their actual expenses rather than relying on, or being limited to, some fixed national or local standard. The Court finds that reading the terms "applicable" and "actual" in this manner is entirely consistent. And although this argument is bolstered by the interpretation given to the National and Local Standards by the IRM, the Court does not find that one must actually incorporate the IRM into the Bankruptcy Code to arrive at this result.

The Court also finds that adopting this approach best meets the apparent overall intent behind the passage of BAPCPA. Although various policy considerations have been discussed, one of the overall policies behind BAPCPA was to require debtors who had the ability to pay more to their creditors to do so. Allowing debtors to take expense deductions for expenses they do not have certainly does not further that goal, and, as practical matter, this approach reaches the actual funds that debtors supposedly have available to pay creditors. Although no system is perfect, and unintended or unfair results will occur in some cases, this is the system that Congress chose to

23

impose upon the bankruptcy process. The Court also finds that adopting this approach does not take away from the desire of Congress for a "rigid and inflexible" set of expense standards discussed in *Scarafiotti*, as the application of the automobile ownership expense will still be very mechanical and straightforward, under either approach.

As an aside, the Court does not adopt the holding that the National and Local Standards operate as caps on the amount debtors can claim. This is especially true in the context of the automobile ownership expenses, because statutory language clearly and expressly allows debtors to claim a larger expense than the amount contained in the IRS standards. If the debt secured by a debtor's automobile, divided by the 60 month term of the plan, is greater than the amount specified in the IRS standards, the debtor is still allowed to take the greater amount.[63] Also, there is nothing in the text of § 707(b)(2)(A)(ii)(I) to suggest that a debtor is only entitled to take the *lesser* of the IRS standards or the actual amount the debtor pays for any particular expense. Therefore, although the Court agrees with the ultimate result in *Wieland v. Thomas*,[64] the Court does not agree with that portion of the analysis suggesting the automobile expense amount is a cap, and not an allowance, for debtors who own or lease cars with some encumbrance on the date of filing.[65]

The Court recognizes that by adopting this approach, the possibility of unfair, if not absurd, results exist. For example, an above-median income debtor who owes a total of $600 on an automobile at the time of filing, will be allowed to deduct the entire expense allowed in the IRS

---

[63]*See* 11 U.S.C. § 707(b)(2)(A)(iii) and Official Form 22C, Lines 28, 47 and 48.

[64]382 B.R. 793 (D. Kan. 2008).

[65]*See In re Egbert*, ___ B.R. ___, 2008 WL 963399 (Bankr. E.D. Ark. 2008) (holding that debtors can take the full amount of the housing and motor vehicle ownership expense for means test purposes, even though their actual expenses were considerably less).

standards, which in this case would be $471 a month over 60 months, despite the fact the debtor will only be effectively paying $10 a month to the secured creditor over the life of the plan. However, this result is no more unfair than allowing a debtor to deduct $471 a month for an automobile expense when the debtor's car is totally unencumbered. Both seemingly unfair scenarios are the unfortunate result of Congress' decision to dictate a statutory scheme that incorporates strict and inflexible standards and figures from the IRM, when those standards were themselves created to serve only as a guide for IRS revenue officers in fulfilling their mission to collect taxes.[66]

The Court finds that the automobile ownership expense used in the means test calculations is not applicable to this Debtor. Based upon the Court's holding on this issue, the Debtor will not be allowed to claim any expenses on Line 28 of Form 22C, and the Trustee's objection is confirmed. This makes an additional $417 a month for 60 months, or $25,030,[67] available for Debtor's unsecured non-priority creditors.

### C. The Debtor cannot deduct expenses related to a priority tax claim on both Line 33 and Line 49 of Form 22C.

The final objection raised by the Trustee concerns Debtor's treatment of an IRS wage levy in the means test calculation. In completing Form 22C, the Debtor claims the amounts levied against his pay constitute "court-ordered payments" that can be deducted as an allowed expense on Line 33. Because the debt that is the subject of the wage levy is a priority debt, the Debtor also

---

[66]The IRM specifically states that the "National and local standards are <u>guidelines</u>" that are to be used by IRS in evaluating whether to accept an offer in compromise on a tax debt. *See* Internal Revenue Manual, §§ 5.15.1.7and 5.8.5.5.1 (2004) (emphasis added). However, Congress has taken the discretion that is given to the IRS agents in applying these numbers as guidelines away from the courts, and mandated that bankruptcy courts use the standards as inflexible standardized allowances, rather than guidelines, as they were originally intended.

[67]This number can be reduced by the $200 per month allowed for older cars when Debtor amends his Form 22C in conformity with this opinion, as well as any additional Chapter 13 administrative expenses (Line 50) that will accompany an increased plan payment.

25

claimed a deduction on Line 49 of Form 22C, which allows for a deduction from income for the total amount of all priority claims. The Trustee argues that deducting the amount of the monthly, pre-petition tax levy on Line 33 is not allowed, and that Debtor is instead limited to the deductions allowed for priority debts on Line 49.

As part of the "actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service" provided for in § 707(b)(2)(A)(ii)(I), debtors are allowed to deduct, on Line 33 of Form 22C, "court-ordered payments." The form, which admittedly is not part of the statute, indicates that debtors are to "[e]nter the total monthly amount that you are required to pay pursuant to court order, such as spousal or child support payments." Form 22C goes on to state: "**Do not include payments on past due support obligations included in Line 49.**"

Debtor contends that an IRS tax levy is analogous to a "court ordered payment" and that he should therefore be permitted to deduct on Line 33 amounts levied from his monthly wages. He claims that because the payments were not "voluntary," the Court should allow Debtor to account for the payments in his means test calculation as a secured debt. Alternatively, he claims that IRS could have filed a Notice of Tax Lien, in lieu of the wage levy, which would have made the IRS claim a secured claim, and which then could have been deducted in full on Line 47.

The Court finds the debt in question cannot be deducted as an allowable expense on Line 33 of Form 22C. First and foremost, a wage levy is not a court ordered payment, which fact Debtor readily admits.[68] Second, the debt in question, which the parties agree is a priority claim that must

---

[68]The IRS is authorized to levy against a taxpayer's property for the payment of past due tax obligations pursuant to 26 U.S.C. § 6331, and no court order is required before a levy can take place.

be paid during this Chapter 13 case,[69] has already been allowed on Line 49, where debtors are allowed to claim an expense for payments that must be made on priority claims. Third, to the extent the Court were to consider treating the IRS tax levy as it would a court ordered payment for debts such as child or spousal support, Line 33 specifically instructs debtors not to enter amounts that are dealt with as priority debts on Line 49. The whole point of this instruction is to make it clear that debtors cannot "double dip" on their expenses by including the same debt twice—once on Line 33 and again on Line 49. The purpose of completing Form 22C is to determine how much remains for payment to unsecured creditors after a debtor pays all expenses that the Code requires or permits be paid—including priority tax claims. Finally, to the extent the Court were to treat this levy similar to how it treats a future payment on a secured debt, as Debtor urges, the Court notes that secured debt is dealt with on Line 47 by taking the amount of the debt, and dividing that amount by 60 months to determine the monthly expense that a debtor can claim—which is precisely how the priority debt in this case is handled on Line 49.

If the above analysis does not make the answer to this question abundantly clear, application of the real numbers in this case shows how untenable Debtor's position is. The Proof of Claim filed by the State of Kansas, Claim 1-3, as amended, shows a priority claim of $2,472.98 on the date of filing. The Proof of Claim filed by the Internal Revenue, Claim 6-1, shows that Debtor owed a priority debt of $11,101.76 on the date of filing. Adding these priority claims together and dividing by 60 months results in a monthly deduction for priority claims of $226.25. Notwithstanding that priority obligation, Debtor nevertheless deducted both $1,293.06 AND $239.51 per month to purportedly pay the $13,574.74 priority claims. This results in Debtor claiming $91,954 in

---

[69]11 U.S.C. § 1322(a)(2) requires Chapter 13 plans pay priority claims in full unless the creditor consents to different treatment.

payments over 60 months when he only requires $13,574.74 to retire the entire priority debt. Obviously, such an interpretation would not further Congressional intent that debtors repay creditors if they have the financial ability to do so.[70]

Debtor also contends that this Court's decision in *In re Allen*,[71] supports his claim that he should be allowed to deduct from income the full amount of the wage levy. In *Allen*, the debtor proposed a Chapter 13 plan that purported to cram down a non-910 debt that was secured by an automobile.[72] The debtor included the full amount of the debt owed on the car when performing the means test, rather than the amount the debtor would actually pay in the case as a result of the legally permissible cram-down.

The Court finds *Allen* to be both factually and legally distinguishable from this case. First, unlike the tax debt in this case, the debt in *Allen* was actually a secured claim. As this Court hopes it made clear in *Allen*, the Court's decision was mandated by the statutory language that permitted a debtor to claim all secured debts that were "scheduled as contractually due"[73] to secured creditors.

---

[70]The Court also notes that even if this were a court-ordered wage garnishment for the collection of an unsecured debt, such as a money judgment for non-payment of a credit card, allowing its deduction on Line 33 would totally undermine one purpose of bankruptcy—equal distribution of debtor's assets among the same class of creditors. Would Debtor argue that if he had a court ordered garnishment for an unsecured Capital One judgment, he could deduct that garnishment from Line 33, and just keep that amount each month? Or would he argue that Capital One, in this hypothetical, would be entitled to receive repayment of 100% of its unsecured debt while all other unsecured creditors received some lesser amount? Line 33 was meant to apply to those court ordered payments that will be an ongoing obligation, such as for child support, and the Court can see no policy reason why a wage garnishment for an unsecured debt, even if court-ordered, would be appropriately deducted.

[71]2008 WL 451053 (Bankr. D. Kan. 2008).

[72]Except as provided for in the "hanging paragraph" found at the end of § 1325(a), debtors in a Chapter 13 proceeding who own encumbered property where the amount of the debt exceeds the value of the property can bifurcate the claim into a secured portion, equal to the current value of the property, and an unsecured portion. Only the secured portion of the claim must be paid in full through the Chapter 13 plan. Generally, the unsecured portion is either not paid at all, or is paid a reduced amount. This practice is commonly referred to as "cramming down" a debt.

[73]11 U.S.C. § 707(b)(2)(A)(iii)(I).

28

That language does not apply to Debtor's priority tax obligation, the treatment of which is not governed by § 707(b)(2)(A)(iii)(I). Instead, § 707(b)(2)(A)(iv) is the pertinent section to consult when determining payment of a priority claim, and that subsection makes no mention of the condition that the debt be "scheduled as contractually due." Finally, nothing in *Allen* permitted the debtor to claim an expense based upon the monthly payments the debtor was making prior to the filing of the bankruptcy, which is what Debtor in this case is trying to do. The Court's ruling in *Allen* allowed the debtor to take the full amount of the secured debt that was "scheduled as contractually due" and divide that number by 60 months to determine the monthly amount the debtor was able to claim for means test purposes.

For example, under the Court's holding in *Allen*, if a debtor is currently making $500 a month car payments, and owes a total of $12,000 on a car that is now only worth $6,000, the debtor would be able to take the full $12,000 currently owed on the car, divided by 60 months, and claim a monthly expense under the means test of $200 a month. The Court rejected the Chapter 13 Trustee's argument that the debtor should be limited to taking, under this example, only $100 per month ($6,000 the debtor would actually pay through the Chapter 13 plan, divided by 60 months) under the means test. The dispute in *Allen* concerned whether the debtor would be allowed to take the $200 a month expense or the $100 a month expense—not whether the debtor could claim the $500 monthly payment he was making prior to filing the bankruptcy petition.

The Court does agree with Debtor (and the Trustee) that he should be allowed to account for the IRS and State of Kansas priority claims in his means test calculation. And he is being so allowed; Line 49 of Form 22C specifically does that. It allows Debtor to deduct the amount that he will be required by the terms of § 1322(a)(2) to pay to these taxing entities for their priority claims,

29

Case 07-40863    Doc# 52    Filed 04/24/08    Page 29 of 31

spread out over the 60 month period of the plan. Debtor is entitled to deduct the monthly expense for the payment of these priority tax claims, but that expense must be calculated on Line 49 of Form 22C, not included both on Line 49 and on Line 33. Finally, the claimed number should be based on the actual amount owed for priority taxes on the date debtor files bankruptcy.

## III.    CONCLUSION

For the foregoing reasons, the Court sustains the Trustee's objections to Debtor's Chapter 13 plan. The Court finds that Debtor cannot claim living and household expenses for his non-dependent, adult son who resides with him, that Debtor cannot claim the automobile ownership expense for a vehicle on which he has no debt, and that Debtor cannot claim the amounts levied against his paycheck in connection with a pre-petition IRS tax levy as a "court ordered payment" on Line 33 of Form 22C (although he can account for the repayment of his entire pre-petition priority debt on Line 49 of Form 22C).

Based upon these rulings, Debtor's Chapter 13 plan cannot be confirmed. If Debtor wishes to continue in this Chapter 13 proceeding, he must file an amended Form 22C, which incorporates the Court's rulings, within 10 days. He must also amend his plan within 10 days to reflect the required payment to unsecured creditors, taken from Line 58 of Form 22C, as that form existed on the date this bankruptcy was filed. If Debtor does not amend Form 22C within 10 days, and a plan in conformity with this opinion is not filed also within 10 days, this Court will dismiss this case for cause under § 1307(c)(1) and (3) for unreasonable delay by the debtor that is prejudicial to creditors, and failure to timely file a new plan after denial of confirmation of the plan then on file.

**IT IS, THEREFORE, BY THE COURT ORDERED** that the Trustee's Objection to Confirmation of Plan is sustained.

###

31